UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION AT FRANKFORT**

| | | |
|---|---|---|
| JERRY GRITTON, | ) | |
| | ) | Civil Action No. 3:05-75-JMH |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM DAVID DISPONETT, | ) | **MEMORANDUM OPINION AND ORDER** |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |

** ** ** ** ** ** ** ** **

This matter is before the Court on the Motions for Summary Judgment filed by the Defendants Richard Murgatroyd and William David Disponett [Record Nos. 31 and 37].[1]  Plaintiff has responded to each of these motions [Record Nos. 33 and 40].  Both Defendants Murgatroyd and Disponett have filed replies in support of their respective motions [Record Nos. 35 and 42].  Plaintiff has also filed, with leave of court, a surreply to further state his objections to Defendant Disponett's motion for summary judgment [Record No. 50].  These motions are now ripe for review.  For the reasons set forth below, the motions shall be granted.

**I.  BACKGROUND**

Plaintiff Jerry Gritton was an employee of the Commonwealth of Kentucky Department of Transportation ("Transportation Cabinet")

---

[1]

Plaintiff has filed a motion for reconsideration of the Court's October 23, 2007, Order suspending the evidentiary deposition of Dan Duren, scheduled for November 13, 2007 [Record No. 54].  The Court need not consider the merits of this motion; it is now moot and will be denied accordingly.

until his retirement on September 1, 2006.  Gritton held the position of Superintendent II in the Transportation Cabinet.  At all times relevant to this matter, Gritton lived in Lawrenceburg, Kentucky.

Defendant Richard Murgatroyd served as Deputy Secretary of the Kentucky Transportation Cabinet from January 2004 to February 2005 in the administration of Governor Ernie Fletcher. In that role, Murgatroyd attended weekly meetings where Transportation Cabinet personnel decisions were discussed.  He did not, however, have authority to make decisions regarding the termination or transfer of employees.

During the time period relevant to this matter, Defendant William David Disponett served as the Treasurer of the Republican Executive Committee.  He did not hold an official position in the state government and was, instead, classified as a "volunteer."  He was supplied with an office in the State Capitol building and with secretarial support from May 2004 to May 2005.  During this time, he made certain personnel recommendations to Governor Ernie Fletcher and was routinely sought out by individuals inquiring about positions in state government.

Gritton states that once Governor Fletcher took office in 2003, he began hearing rumors that his job was in jeopardy.  The implication of these rumors, according to Gritton, was that he might be fired or transferred as he was a Democrat in a Republican

administration.  In order to assuage his fears, Gritton approached his supervisor, Karen Doumas, and was told that he could only be transferred under certain circumstances since his job was considered a merit position.

Around this time, Disponett's nephew, Tony Disponett, approached Disponett about obtaining a job in the Anderson County Highway Department.  Disponett referred Tony to Jessica Masters, a state employee responsible for facilitating hiring in state government positions.  Disponett then reported this to Cory Meadows, a liaison between the Governor's Office and the Transportation Cabinet. At some point, Disponett told Meadows that he had heard complaints about Gritton's use of state highway employees for personal matters, and inquired about whether Gritton could be transferred.

Eventually, at a weekly personnel meeting which Murgatroyd attended with Meadows and Dan Druen, Murgatroyd learned of Tony Disponett's interest in a position in Anderson County, the alleged complaints about Gritton, and that Gritton might be interested in a transfer.  Murgatroyd then turned the matter over to those in charge of personnel, although he did discuss possible Anderson County personnel changes with Disponett over dinner one evening. He followed up with an August 31, 2004 email which reads as follows:

> Dave: The other night at Applebee's
> we were talking about Jerry Gritton.

-3-

> I had a note in my file that he
> might want to be transferred.   Is
> that the case?

Gritton alleges that he was then pressured by various individuals to transfer to Fayette County. At a September 9, 2004 meeting with Jim Rummage and Bob Stergeon, Gritton's superiors, Gritton was asked whether he would accept a transfer.   Gritton declined.  Disponett's nephew, Jimmy Morgan, a friend of Gritton's but not a state employee, then approached Gritton, asking him if he wanted to keep his job, and telling him that he was "taking hits." Morgan urged Gritton to call Disponett, which he attempted several times, though he never spoke to Disponett.  Morgan assured Gritton that Disponett was aware of these calls.  Gritton's brother, Bud Gritton, a general contractor for Disponett, warned Gritton that he should accept a transfer, and, in late September 2004, told Gritton that he would be fired or transferred to Paducah, Kentucky if he did not accept a transfer.  Gritton later received a call from Rummage telling him that Bud Gritton had indicated that Plaintiff Gritton would accept a transfer.   Gritton approached his supervisor, Doumas with his concern that he would be fired if he did not transfer; Doumas stated that, according to Murgatroyd, Gritton no longer had a choice.

Gritton was officially informed of his transfer from Anderson County to Fayette County on September 9, 2004, to be effective January 1, 2005.  On November 1, 2004, Gritton signed a Voluntary

-4-

Transfer/Demotion form.   According to Gritton, he voiced his objections at that time, making it clear to Rummage and Stergeon that he was accepting the transfer only because he felt he would be fired if he did not.  Gritton has testified that Rummage later told him the reason he was transferred was that the state administration wanted his job.  After Gritton's transfer to Fayette County, Tony Disponett was hired as a Superintendent II for Anderson County by the Department of Transportation.

Gritton had the same job responsibilities and duties before and after the transfer to Fayette County, but received a higher rate of pay after the transfer.  After the transfer, Gritton's salary became subject to a 2.5% payroll tax imposed by the Lexington-Fayette Urban County Government.  Although his job responsibilities and duties remained the same, Gritton felt that there were greater pressures imposed upon him in performing those duties in Fayette County due to larger amounts of traffic and the presence of more state-maintained roadways in Fayette County as compared to Anderson County.

Following the transfer, his daily commute time increased from five minutes to thirty or forty minutes to and from work.  Additionally, following the transfer, he was unable to accept overtime work available to him because he could not respond quickly enough from his home in Anderson County to requests for assistance in Fayette County.   Instead, he would call someone in Fayette

County to respond to the request and, thus, forewent the opportunity to receive time-and-a-half "comp time" as remuneration for this additional work.

Ultimately, Gritton took early retirement after the transfer because his wife was ill and he found it difficult to care for her while working in Fayette County. Prior to the transfer and while still working in Anderson County, he had planned to work at least five more years before retiring, since it was fairly easy for him to respond quickly to her needs from his work location and to obtain the time off to care for her. After the transfer to Fayette County, however, he decided to spend approximately $40,000 of his own funds to "purchase" retirement years, foregoing his plan to work at least five more years and then retire from employment with the Department of Transportation.

Gritton has alleged that he was forcibly transferred to Fayette County due to his political affiliations as part of an "unlawful and unconstitutional patronage system." [Complaint, ¶ 15.] He brings his claims against Defendants Murgatroyd and Disponett under 42 U.S.C. § 1983, stating that his transfer violated his rights of speech and association under the First Amendment to the United States Constitution. There remains pending, as well, Plaintiff's claim that Defendant Disponett violated his right to be free from arbitrary action under the Second Amendment of the Kentucky Constitution. Plaintiff claims

-6-

that the Defendants conspired to deprive him of these rights and that he was retaliated against for exercising these rights.  For the reasons which follow, his claims must fail.

## II. STANDARD OF REVIEW

A grant of summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).

The moving party bears the initial burden to show the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  This burden is met simply by showing the court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial.  *Id.* at 325.  The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim."  *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).  A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law.  *Celotex*, 477 U.S. at 325.

When determining if summary judgment is proper, the Court's function is not to weigh the evidence, but to decide whether there are genuine factual issues for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Multimedia 2000, Inc. v. Attard*,

374 F.3d 377, 380 (6th Cir. 2004).  A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248; *Summers v. Leis,* 368 F.3d 881, 885 (6th Cir. 2004).  The evidence should be construed in the light most favorable to the nonmoving party when deciding whether there is enough evidence to overcome summary judgment.  *Anderson*, 477 U.S. at 255; *Summers*, 368 F.3d at 885. While this Court must draw all inferences in a light most favorable to the plaintiff, summary judgment may be granted "if the record, taken as a whole, could not lead a rational trier of fact to find for [the plaintiff]." *McKinnie v. Roadway Express*, Inc., 341 F.3d 554, 557 (6th Cir. 2003) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

## III.  ANALYSIS

### A.   Defendant Disponett has Waived the Affirmative Defense of Statute of Limitations

Defendant Disponett argues that Plaintiff's 42 U.S.C. §1983 claims against him are barred by the applicable one year statute of limitations as Plaintiff's complaint was not filed until October 27, 2005, more than one year after his claims accrued on the day he was informed of the transfer decision, September 9, 2004.  The legal and mathematical merit of Defendant Disponett's defense notwithstanding, it comes too late.  Fed. R. Civ. P. 8(c) provides

-8-

that, "[i]n pleading to a preceding pleading, a party shall set forth affirmatively . . . statute of limitations."  A defense based upon a statute of limitations is waived if not raised in the first responsive pleading.  *Haskell v. Washington Tp.*, 864 F.2d 1266, 1273 (6th Cir. 1988).  Having reviewed the parties' pleadings, the Court notes that Defendant Disponett filed an answer to Plaintiff's Complaint [Record No. 9] on November 16, 2005, without raising the statute of limitations issue.  It has been raised now, for the first time, in his motion for summary judgment some one year and eight months later.[2]  At this late date, the Court finds that the affirmative defense has long since been waived and will consider it no further.

### B.   Plaintiff's 42 U.S.C. § 1983 Claims for Violation of His First Amendment Rights Fail As a Matter of Law

42 U.S.C. § 1983 is the gateway to redress for wrongs of constitutional proportions committed by a party acting under color of state law.[3]  Gritton's Complaint claims violations of his rights

---

[2]

Defendant Murgatroyd has never raised the issue, and it would be error for this Court to raise the waivable affirmative defense of the statute of limitations *sua sponte*, its apparent merit notwithstanding*. Haskell v. Washington Tp.*, 864 F.2d 1266, 1273 (6th Cir. 1988).

[3]

In his motion for summary judgment, Defendant Disponett argues that this Court should dismiss the § 1983 claims pending against him as he was not a state employee at any time relevant to this action and, thus, could not have been acting under color of state law.  As Plaintiff's §1983 claims fail for the reasons stated elsewhere in this opinion, the Court need not decide this issue and

of Free Speech and Association under the First Amendment. Specifically, Gritton alleges that the defendants violated his constitutionally protected rights to free speech and association by effecting a forced transfer of his job and that his transfer was a retaliatory act due to his political affiliations.[4]   Although speech and association are separate Constitutional rights protected from government intrusion under the First Amendment, alleged violations of these rights are to be analyzed in the same way.  *See Scarbrough v. Morgan County Bd. of Educ.*, 470 F.3d 250 (6th Cir. 2005).

---

declines to do so.

[4]    Gritton alleges a separate claim for conspiracy to violate his First Amendment rights under 42 U.S.C. § 1983.  [*See* Complaint ¶¶ 4, 7, 12].  The Sixth Circuit has defined a civil conspiracy, such as the one alleged here, as "an agreement between two or more persons to injure another by unlawful action."  *Weberg v. Franks*, 229 F.3d 514, 526 (6th Cir. 2000).  A conspiracy claim requires a showing of "a single plan, that the alleged coconspirator shared in the general conspiratorial objective, and that an overt act was committed in furtherance of the conspiracy *that caused injury to the complainant.*"  *Memphis Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 905 (6th Cir. 2004) (emphasis added).

Common sense dictates that no conspiracy to violate one's Constitutional rights can occur where there is not sufficient evidence to demonstrate that one's rights were violated, as explained elsewhere in this opinion.  Accordingly, summary judgment will be granted to Defendants Murgatroyd and Disponett on these claims, and Gritton's conspiracy claims under 42 U.S.C. § 1983 shall be dismissed.

-10-

For Gritton, a public employee, to establish a prima facie case of First Amendment retaliation pursuant to 42 U.S.C. § 1983, he must show that:

> (1) [Plaintiff] was engaged in a constitutionally protected activity; (2) that the defendant's adverse action caused the [Plaintiff] to suffer an injury that would likely chill a person of ordinary firmness from continuing in that activity; and (3) that the adverse action was motivated at least in part as a response to the exercise of the [Plaintiff's] constitutional rights.

*Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 228 (6th Cir. 2005); *see also Siggers-El v. Barlow*, 412 F.3d 693 (6th Cir. 2005); *Poppy v. City of Willoughby Hills*, 96 Fed. Appx. 292 (6th Cir. 2004); *Hoover v. Radabaugh*, 307 F.3d 460 (6th Cir. 2002); *Leary v. Daeschner,* 228 F.3d 729, 737 (6th Cir.2000). If Plaintiff fails to carry his burden for any one of the three elements, the movants are entitled to summary judgment on his claims. *Evans-Marshall*, 428 F.3d at 228.

In the instant matter, although Gritton has identified a constitutionally protected activity satisfying the first prong of the test, his claim must fail as he can neither identify an adverse action nor demonstrate that his transfer, the action of which he complains, was motivated at least in part as a response to the exercise of his constitutional rights.[5]

---

[5]

Speech or association is considered a matter of public concern and, thus, a Constitutionally protected activity under the first

-11-

### 1.   Plaintiff Has Failed to Identify an Actionable Adverse Employment Action

Adverse employment actions – including promotion, transfer, recall, or hiring decisions – based on political affiliation or support "are an impermissible infringement on the First Amendment rights of public employees." *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 75 (1990).  While the Supreme Court has held that it would be "unduly restrictive" for courts to require a plaintiff to demonstrate the "substantial equivalent of a dismissal,"  courts require "more than a trivial act to establish constitutional harm." *Pierce v. Texas Dep't of Criminal Justice, Institutional Div.*, 37 F.3d 1146, 1149 n.1 (5th Cir. 1994) (requiring important conditions of employment to be involved in the political patronage act to be actionable); *accord Stavropoulos v. Firestone*, 361 F.3d 610, 619 (11th Cir. 2004); *c.f. Tao v. Freeh*, 27 F.3d 635 (D.C. Cir. 1994) (recognizing a "broad construction of adverse action acknowledged by the Supreme Court in *Rutan*").

---

prong of the test, if it can be "fairly considered as relating to any matter of political, social, or other concern to the community." *Connick v. Myers*, 461 U.S. 138, 146 (1983).  Gritton contends that the sole basis for his transfer was the general act of participating in and being a member of a political party, which, as Defendants apparently concede, qualifies as protected speech or association under the *Pickering* test. The Court agrees, and the first prong of the Sixth Circuit's test is satisfied here: by participating in and being a member of a political party,  Gritton was engaging in a Constitutionally protected activity.

An action is sufficiently adverse to be cognizable in a retaliation claim under § 1983 if it "would chill or silence a 'person of ordinary firmness' from future First Amendment activities."[6]   *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (quoting *Crawford-El v. Britton,* 93 F.3d3, 826 (D.C. Cir. 1996) (internal citation omitted)).   Thus, in *Sharpe v. Cureton*, No. 97-6428, 1999 WL 55274, *2 (6th Cir. Jan. 13, 1999), in which fire department employees alleged retaliation for failing to support the mayor in a reelection campaign, the Sixth Circuit Court of Appeals found that "transfer to unfamiliar fire stations, loss of a promotion opportunity, reassignment to a position with lower hourly pay, and the denial of consideration for merit pay raises and bonuses . . . [were] clearly adverse enough to be actionable." The actions taken were "sufficiently harsh . . . to 'press state employees ... to conform their beliefs and associations' to the selected orthodoxy" and "[o]ne would have to be a person of more than ordinary firmness to be willing to pay the price allegedly exacted by the . . . administration for the privilege of declining a place on the mayor's bandwagon."   *Id.*

---

[6]   "[A]s a tort statute, § 1983 requires injury and '[i]t would trivialize the First Amendment to hold that harassment for exercising the right of free speech was always actionable no matter how unlikely to deter a person of ordinary firmness from that exercise. . . .'" *Thaddeus-X v. Blatter*, 175 F.3d 378, 397 (6th Cir. 1999) (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)).

"Adverse employment action" has been defined by the Sixth Circuit Court of Appeals in a variety of employment discrimination cases, and that definition is helpful to this Court in understanding the severity of the harm alleged in the context of Plaintiff's § 1983 action. In *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789 (6th Cir. 2004) (sex discrimination claim), the court held that, to be adverse, an employment action must "constitute[] a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *White*, 364 F.3d at 798. Further, a plaintiff must "show that she suffered a materially adverse change in the terms of her employment." *Id.* at 797. On the other hand, in the employment discrimination context, "[a] mere inconvenience or an alteration of job responsibilities or a bruised ego is not enough to constitute an adverse employment action." *Id.*

As explained in *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876 (6th Cir. 1996) (in the context of a disability discrimination claim), "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions . . . ." *Kocsis*, 97 F.3d at 885; *see also Yates v. Avco Corp.*, 819 F.2d 630, 738 (6th Cir. 1987) (no adverse action where, as condition of "promotion," employee required to sign agreement stating that earlier "demotion" that did not involve pay or benefits reductions

-14-

had taken place at her request); *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir. 1989) (no "materially adverse change in the terms or conditions of employment" where school principal transferred to dual-principalship position with merit-pay increase even though job perceived as "nudge towards retirement"); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir. 1994) ("Changes in duties or working conditions that cause no materially significant disadvantage . . . are insufficient to establish the adverse conduct required to make a prima facie case."); *Haimovitz v. United States Department of Justice*, 720 F. Supp. 516, 523 (W.D. Pa. 1989) (in context of age discrimination claim, no adverse employment action where government attorney was reassigned from Pennsylvania to Texas with same job title and pay without objective evidence of undesirability of position). "A reassignment without salary or work hour changes, however, may be an adverse employment action if it constitutes a demotion evidenced by a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *White*, 364 F.3d at 797.

The relevant facts are undisputed. Gritton held the same position – Superintendent II – both before and after the transfer. He had the same job responsibilities and duties before and after the transfer. The parties agree that Gritton received a higher

rate of pay after his transfer.  After Gritton's transfer from Anderson County to Fayette County, there is no doubt that his commute increased from five minutes to thirty or forty minutes each way.  Additionally, Gritton no longer worked overtime available to him as Superintendent II once he transferred to Fayette County because he could not respond quickly enough from his home in Anderson County to requests for assistance in Fayette County. Instead, he would call someone in Fayette County to respond to the request and, thus, forewent the opportunity to receive time-and-a-half "comp time" as remuneration for this additional work.

Further, the parties do not dispute that Gritton took early retirement after the transfer because his wife was ill and he found it difficult to care for her while working in Fayette County. While working in Anderson County, he had planned to work at least five more years before retiring, since it was easy for him to respond quickly to her needs from his work location and to obtain the time off to care for her.  After the transfer to Fayette County, however, he decided to spend approximately $40,000 of his own funds to "purchase" retirement years, foregoing his plan to work at least five more years and, only then, retire from employment with the Department of Transportation.

It is also undisputed that, after the transfer, Gritton's salary became subject to a 2.5% payroll tax imposed by the Lexington-Fayette Urban County Government upon any individual

-16-

employed in Fayette County.  The imposition of this tax on Gritton and any other individual, whether an employee of the Commonwealth or another public or private entity, working in Fayette County can hardly be attributed to Defendants and is irrelevant to any determination to be made in this matter.

Plaintiff has also testified that, after the transfer, there were greater pressures imposed upon him in performing his duties due to larger amounts of traffic and the presence of more state-maintained roadways in Fayette County as compared to Anderson County.  The Court notes that an increase in the size of one's territory can be a factor in determining whether an adverse employment action has taken place, *see Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539 (6th Cir. 2002), but here Plaintiff was still responsible for only one county.  While he may have felt greater pressure, he has set forth no evidence that his duties and responsibilities as a Highway Superintendent II actually changed after the transfer nor has he presented any evidence quantifying that his actual workload increased after the transfer as a result of increased volume of traffic, number of roadways, or any other factor.  His subjective feelings about pressures imposed by the road conditions in Fayette County are an insufficient factual foundation for a finding of an adverse employment action in the context of his First Amendment/§ 1983 claim.

In other words, Plaintiff's alleged injury is centered on the increased distance between his home and his duty station and the increased travel time imposed upon him by the increased distance. But for that, he claims he would never have foregone overtime opportunities or taken early retirement. Although "increased distance from home to a new position is a factor" in determining whether an adverse employment action has occurred, it is not enough to survive summary judgment in this instance. *Policastro v. Northwest Airlines, Inc.*, 297 F.3d 535, 539-40 (6th Cir. 2002).

In *Darnell v. Campbell County Fiscal Court*, the district court found that an employer's decision to transfer the plaintiff's secretarial job to another location was not an adverse employment action. *Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1310-11 (E.D. Ky. 1990) (alleging age discrimination).[7] In *Darnell,* the district court found that there was no constructive discharge where the new job had the same duties and

---

[7]
Expressed differently, in the context of an employment discrimination claim, a transfer without any change in wages or benefits can be actionable as an adverse employment action, but the transfer must amount to a "constructive discharge." *Darnell v. Campbell County Fiscal Court*, 731 F. Supp. 1309, 1313 (E.D. Ky. 1990). To demonstrate constructive discharge, "a plaintiff must show that the working conditions would have been so difficult or unpleasant that a reasonable person in the employee's position would have felt compelled to resign" and demonstrate "objective criteria that would create intolerable conditions that a reasonable person could not be expected to bear." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 887 (6th Cir. 1996); *Darnell*, 731 F. Supp. at 1313.

responsibilities, salary, and grade level as the old job, even though it meant the plaintiff had an added twenty-minute commute. *Id.* That extra commute precluded the plaintiff from traveling to her home at lunch to care for her sick brother, which was her custom. *Id.* The court explained that:

> The mere subjective preferences of the plaintiff-such as the desire to go home for lunch-are insufficient to turn a transfer of location into a constructive discharge. A constructive discharge must be based on objective criteria that would create intolerable conditions that a reasonable person could not be expected to bear. *Yates* [*v. Avco Corp.*], 819 F.2d [630,] 636-37 [(6th Cir. 1987)];*Cherchi* [*v. Mobile Oil Corp.*]*,* 693 F.Supp. [156,] 163 [(D.N.J. 1988)]. Millions of working people are unable to go home for lunch.

*Id.* at 1313.

Although Plaintiff need not demonstrate a constructive discharge in the context of his § 1983 claim for violation of his First Amendment rights, he must provide evidence of an action sufficient to chill or silence a person of ordinary firmness from future First Amendment activities. *Thaddeus-X*, 175 F.3d at 397. Plaintiff's thirty to forty minute commute is greater than the twenty minute commute discussed in *Darnell*, but it is not so much greater as to render the difference meaningful. In other words, the increase in Plaintiff's commute is certainly insufficient to render his transfer a constructive discharge. Further, the increased commute which resulted from Plaintiff's transfer is not,

in this Court's opinion, sufficiently adverse to chill or silence a person of ordinary firmness from future First Amendment activities, i.e., belonging to a particular political party. Plaintiff's transfer simply does not rise to the same level as the adverse actions discussed in *Sharpe,* 1999 WL 55274 at *2.  He has not alleged, for example, that was injured by lack of familiarity with his new duty station in Fayette County or that he lost promotion opportunities.  He continued to receive the opportunity to perform overtime work and received a pay raise as a result of his transfer.[8] All that is left is Plaintiff's increased commute time and, for the reasons which follow, the court finds that fact insufficient to support his claim.

Plaintiff's desire to be closer to home while at work, so as to spend as little time commuting each day as possible, to have more time to care for his wife, and to avail himself of the overtime opportunities provided to him as he did prior to his transfer is understandable.  It is, however, his subjective preference.  He has not presented the type of objective criteria upon which a reasonable jury could find that his First Amendment rights were violated, even when the Court considers that most if

---

[8]
The Court notes that Gritton's alleged overtime loss was a function of his residence, i.e., his increased commute time, and not a failure on the part of his employer to offer overtime opportunities.

not all people would prefer to spend less and not more time commuting to and from work.

Gritton's situation is not analogous to those cases on which he relies to demonstrate that his transfer was an adverse action. In *White*, 364 F.3d 789, the plaintiff was subjected to an adverse action when transferred from a forklift operator position to a standard track laborer position at the same salary. The evidence demonstrated that the new position was more arduous and "dirtier" and required fewer qualifications than the former position, all indications that the former position was more prestigious than the new one. *Id.* at 803. The plaintiff in *Strouss v. Michigan Dept. of Corrections*, 250 F.3d 336 (6th Cir. 2001), was a nurse in a state corrections complex and the subject of a lateral transfer from one facility to another, where she had received threats on her life from the inmates. The Court held that this transfer could constitute an adverse employment action since she was placed in danger by virtue of the move. *Id.* at 342-43.

Unlike the plaintiff in *White*, Plaintiff has not presented evidence showing that he was transferred to a different and objectively worse or less prestigious position; rather his position and responsibilities remained the same, and he received a raise.[9]

---

[9] Gritton has not identified any cases in which a transfer accompanied by a pay increase was held to be an adverse employment action. The Court declines the opportunity to make this case the first such example.

He has not set forth evidence that the position in Fayette County was somehow perceived as less desirable than the position in Anderson County amongst employees of the Transportation Cabinet or anyone else.   Further, Gritton has not demonstrated that the transfer to Fayette County posed a danger to his life as in *Strouss*.

Gritton has not set forth evidence of a "significant change in [his] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits" or that he has been transferred to a position with "a less distinguished title, a material loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to [his] particular situation." *White*, 364 F.3d at 797-98.   Looking to *Rutan* and its progeny, he has not demonstrated an action sufficiently adverse to chill or silence a person of ordinary firmness from future First Amendment activities.   *Thaddeus-X*, 175 F.3d at 397.   As no reasonable jury could determine that an adverse employment action occurred, Plaintiff's 42 U.S.C. §1983 claim for alleged violations of his First Amendment rights to free speech and association must fail as a matter of law.   *See Evans-Marshall*, 428 F.3d at 228.

> **2.   Gritton Has Not Provided Admissible Evidence of Political Motivations Behind the Transfer**

Even if Gritton could demonstrate an "adverse employment action," he has failed to set forth evidence to demonstrate "that the adverse action was motivated at least in part as a response to the exercise of the [Plaintiff's] constitutional rights," and his §1983 claim must fail as to Defendants Murgatroyd and Disponett. *Evans-Marshall*, 428 F.3d at 228.

In support of his claim that his transfer was politically motivated, Gritton relies heavily upon those portions of his deposition in which he recounts meetings with various individuals and the statements that were made to him by those individuals regarding his tenure in Anderson County and the likelihood of a transfer.  Bob and Edward Cook, employees of Disponett, commented on their surprise that Gritton had not been fired or transferred after the Republican administration came to power.  In turn, he has also recounted out-of-court statements made to him by Rummage, Stergeon, Morgan, Bud Gritton, and Doumas, all in an attempt to prove the truth of what he claims that these individuals asserted – that he was marked for transfer from Anderson County, or worse, by virtue of his political party affiliation.[10]

---

[10]

Gritton has testified that Rummage, Stergeon, Morgan, Bud Gritton, and Doumas talked to him about whether he would accept a transfer, whether he wanted to keep his job, telling him that he was "taking hits," that he should call Disponett, and that he should take a transfer in order to avoid being fired or transferred to Paducah.  He recounts, as well, a call from Rummage telling him that Gritton's brother had let it be known that Gritton had agreed to a transfer.

-23-

Hearsay is, by definition, "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c); *United States v. Payne*, 437 F.3d 540, 544 (6th Cir. 2006).  Hearsay evidence may not be considered on a motion for summary judgment.  *See Sutherland v. Michigan Dep't of Treasury*, 344 F.3d 603, 620 (6th Cir. 2003).  While there exist numerous exceptions to the hearsay rule, Gritton has not identified any applicable to the out-of-court statements of others recounted in his deposition testimony.  This evidence is inadmissible, and the Court may not consider it in its determination of this motion.[11]

---

[11]
Gritton relies on this same evidence to support his theory that his transfer was not truly voluntary and was an adverse action as he only agreed to it under duress of losing his job altogether. It is undisputed that Gritton signed a Voluntary Transfer form in connection with the transfer of his employment from Anderson to Fayette County, and that he voiced his disagreement with the transfer even as he signed the form.  Without deciding whether duress would render the transfer sufficiently adverse to chill or silence a person of ordinary firmness from future First Amendment activities, *Thaddeus-X*, 175 F.3d at 397, the Court remarks that Plaintiff has failed to marshal the admissible evidence necessary to demonstrate his bona fide duress in the first place.

Duress is "an actual or threatened violation or restraint on a man's person, contrary to law, to compel him to enter into a contract or to discharge one."  *Bond State Bank v. Vaughn*, 44 S.W.2d 527, 528 (Ky. 1931); *see also Boatwright v. Walker*, 715 S.W.2d 237 (Ky. Ct. App. 1986)).  Such conduct must be "violence or threats made by a party or some person acting for or through him, or by his advice or counsel, as are calculated to produce on a person of ordinary intelligence a just fear of great injury to person."  *Vaughn*, 44 S.W.2d at 527.

As discussed elsewhere in this opinion, the evidence set forth above is hearsay or, worse yet, hearsay within hearsay.  Gritton cannot rely on inadmissible evidence to support his theory that

-24-

Similarly, the Court may not consider the indictments handed down against both Murgatroyd and Disponett by the Franklin County Grand Jury for alleged violations of the state merit laws.  While the Sixth Circuit has observed that "[s]everal courts have held that an indictment *from a previous conviction* is properly included within the scope of Rule 803(22) and is thus admissible despite being hearsay," *Mike's Train House, Inc. v. Lionel L.L.C.*, 472 F.3d 398, 412 (6th Cir. 2006) (emphasis added), Murgatroyd and Disponett's indictments did not result in convictions.[12]  Instead, they were dismissed by executive pardon.  Absent a conviction, it follows that these indictments do not come within the scope of Rule 803(22) and remain inadmissible hearsay.

Insofar as Gritton attempts to rely on knowledge gained through newspaper reports – "that various e-mails had been discovered which masked Murgatroyd's role in the personnel scandal related to transfers of Transportation Cabinet employees" – these

---

there existed a threat of politically motivated termination.  Even if Gritton could find an exception which would permit the hearsay evidence to be considered by the Court, he has testified that he did not believe that the above individuals were speaking on behalf of either Murgatroyd or Disponett.  In other words, Gritton cannot demonstrate that any of the individuals were acting on behalf of Defendants to produce a "just fear" of termination for politically motivated reasons.

[12]
There is particular evidentiary danger in admitting such indictments, in any event, since indictments may be issued where the entire basis of evidence against the criminal defendant is hearsay.  *See Costello v. United States*, 350 U.S. 359, 363 (1956); *United States v. Mack*, 837 F.2d 254, 258 (6th Cir. 1988).

-25-

newspaper articles are also out-of-court statements which constitute inadmissible hearsay. [Pl. Resp. to Murgatroyd's Mot. for Sum. Judg. at 12.]   Accordingly, the Court will not consider this information, either.

Plaintiff has also asked this Court to consider as evidence an unsworn statement of Dan Druen, given to an investigator from the State Attorney General's Office.[13]   Federal Rule of Civil Procedure 56(c) states that a party may rely upon pleadings, depositions, answers to interrogatories, admissions on file, as well as affidavits.[14]  Druen's statement does not have equal dignity with those items set forth in Fed. R. Civ. P. 56(c) and does not

---

[13]

In this statement, Druen relates that Disponett had communicated to him the difficulty that the Republican administration was having in placing its "people" in merit positions in the Transportation Cabinet and that Disponett allegedly wanted Gritton's job to be given to his nephew, as well as describing a meeting at which placing Disponett's nephew into Gritton's position was discussed in more detail.

[14]

It is irrelevant to this Court that Druen is anticipated to provide the same information in sworn testimony should the case continue to trial, as Gritton claims.  Plaintiff had many, many months in which to obtain a sworn statement from Druen while discovery remained open in this matter and, apparently, failed to do so.  Neither has he presented an affidavit explaining the reasons, in good faith, that he could not present the sworn testimony of Druen that he apparently views as "essential to justify [his] opposition" of Defendants Murgatroyd and Disponett's motion for summary judgment at this time.  Fed. R. Civ. P. 56(f); *Brock v. Marymount Medical Center, Inc.*, Civil Action No. 6:06-285-DCR, 2007 WL 196895, *8 (E.D.Ky. Jan. 23, 2007) (*citing McKinley v. City of Mansfield,* 404 F.3d 418, 443 (6th Cir. 2005); *Vance By and Through Hammons v. United States,* 90 F.3d 1145, 1149 (6th Cir. 1996)).

-26-

offer proper support for Plaintiff's opposition to the motions at bar.

Even if the Court could consider the statement in spite of Rule 56(f), Gritton has conceded that Druen's statement is hearsay. While he argues that Druen's statement should be considered admissible non-hearsay under Federal Rule of Evidence 801(d)(2)(E), as a statement of a co-conspirator (presumably of Disponett and Murgatroyd), Rule 801(d)(2)(E) requires such a statement to be made "during the course and in furtherance of the conspiracy." The statement in question was made to an official in the Attorney General's Office charged with investigating the actions which were the subject of Druen's statement. One can hardly intend to "further" a conspiracy by confessing the details of the conspiracy to the very officers investigating it, nor can it reasonably be argued that such a statement could have been made "in the course of" the conspiracy, if a conspiracy there was. This statement is inadmissible hearsay, and the Court will not consider it.

Finally, Gritton offers the affidavit of Paul Bailey, a Transportation Department employee who holds the same position that Gritton held, Superintendent II. From Bailey's affidavit, the Court understands that he, too, has filed a lawsuit against Defendants alleging that he was transferred (from Magoffin County

to Powell County) in retaliation for his political affiliation.[15] Bailey's affidavit further sets forth that he, Gritton, and another individual, Vernon Carson, were subject to transfers in the same time period. Bailey states his belief (1) that the "transfers were politically retaliatory in nature and were all designed to punish and/or intimidate those transferred for their political associations rather than any legitimate governmental operational reasons . . . ." and (2) that "all of these transfers were a common plan among those senior transportation officials to transfer employees as a way of punishing them for their lack of political loyalty." [Aff. of Paul Bailey at ¶¶ 6-7.] At best, Bailey's affidavit tends to make nothing in Gritton's case more or less probable; thus, it is irrelevant and inadmissible. Fed. R. Evid. 401 and 402. At worst, it is speculation, stating Bailey's beliefs regarding the actions alleged by Gritton but without any basis in fact. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 585 (6th Cir. 1992) ("[T]he statements . . . are nothing more than rumors, conclusory allegations and subjective beliefs which are wholly

---

[15] The Court notes that Bailey does not offer details of his own transfer. Even if he had done so, "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b). Evidence of actions taken by Defendants with regard to Bailey would not be admissible to demonstrate that Defendants were acting "in conformity therewith" at the time of Gritton's transfer. Insofar as Plaintiff offers the scant testimony of Bailey for its "me too" effect, it shall be disregarded.

-28-

insufficient evidence to establish a claim of discrimination as a matter of law."). In either event, the Court finds nothing in Bailey's affidavit that it may take into consideration when evaluating Defendants' motions for summary judgment and Gritton's opposition thereto.

What, then, is the Court left to consider?

The admissible evidence of record shows that Gritton is a registered Democrat and that Defendants Murgatroyd and Gritton are affiliated with the Republican administration of Governor Ernie Fletcher.[16] Disponett made personnel recommendations for the Fletcher administration while serving the state government in an unofficial capacity. He was classified as a "volunteer" rather than a state employee, but he was supplied with an office in the Capitol and state-funded secretarial support. Disponnet has testified that his nephew, Tony Disponett, approached him about a Transportation Cabinet job in Anderson County, and that Disponett sent his nephew to see Jessica Masters, a state employee who facilitated hiring decisions. Disponett called to inform Masters of his nephew's request and told her "to make sure that she sent him in the right spot . . . ." Disponett also spoke to Cory Meadows, a liaison between the Governor's Office and the

---

[16]
It is not clear from the facts set before the Court that Disponnet or Murgatroyd knew of Gritton's political affiliation nor has any party set before this Court any evidence of Tony Disponnet's own political affiliation.

Transportation Cabinet, about how people in the Anderson County Highway Department had been complaining about Gritton for years. Disponett asked Meadows if there could be transfers from merit positions such as Gritton's, and Meadows told Disponett that he did not know and would have to find out.  Disponett has testified that he was not involved in any further discussions relating to Gritton's job.

Murgatroyd has testified that Disponett reported all of this to him and that Murgatroyd met weekly with Druen and Meadows to discuss Transportation personnel decisions.   At one of their meetings, Murgatroyd learned of Tony Disponett's interest in the Anderson County job, that co-workers allegedly had problems with Gritton, and that Gritton might have some interest in transferring from Anderson County.   Murgatroyd then turned the matter over to those in charge of personnel, although he did discuss possible Anderson County personnel changes with Disponett over dinner one evening.  He followed up with an August 31, 2004 email which reads as follows:

> Dave: The other night at Applebee's we were talking about Jerry Gritton.  I had a note in my file that he might want to be transferred. Is that the case?

Gritton was ultimately transferred over his voiced objections, but having signed a Voluntary Transfer form, to the same position in Fayette County.  Once transferred, he had the same title and the same duties at a higher salary.   Following his transfer,

Disponett's nephew, Tony Disponnet, was hired as a Superintendent II in Anderson County.

In short, the evidence of record tells a simple story.  Tony Disponett wanted a job in the Anderson County Highway Department. His uncle, Defendant Disponnet, had connections with the personnel decision-makers at the Department of Transportation.  Gritton's position seemed a favorable one for Tony Disponett to have. Whatever the reason, it is irrelevant to this Court's decision because, at the end of the day, if Gritton was pressured to transfer, there is no evidence in the record that he was transferred for being a Democrat, only that he was transferred for happening to hold a job wanted by a family member of a well-connected man.

At the end of the day, Plaintiff has failed to set forth evidence to demonstrate "that the adverse action was motivated at least in part as a response to the exercise of the [Plaintiff's] constitutional rights," and his §1983 claim must fail as to Defendants Murgatroyd and Disponett. *Evans-Marshall*, 428 F.3d at 228.

### C.   State-Law Claims for Wrongful Discharge and Arbitrary Action

Finally, Defendant Disponett asks that this Court dismiss Plaintiff's remaining claims for wrongful discharge and for violations of the Kentucky Constitution, Section 2.  Actual discharge or termination of employment is an essential element of

a wrongful discharge claim under Kentucky law, neither of which has been alleged by Plaintiff Gritton.  *See Firestone Textile Co. v. Meadows*, 666 S.W.2d 730 (Ky. 1984).  Accordingly, his claim must fail, and it shall be dismissed.  Further, no cause of action may lie against a private individual for subjecting a citizen to arbitrary action in violation of Kentucky Constitution, Section 2.  *Clark v. Kentucky*, 229 F. Supp. 2d 718, 828 (E.D. Ky. 2002).  This claim shall be dismissed with prejudice, as well.

**IV.   CONCLUSION**

For the reasons stated above, Defendants Murgatroyd and Disponnet's motions for summary judgment shall be granted.  Accordingly,

**IT IS ORDERED:**

(1)  that Richard Murgatroyd's Motion for Summary Judgment [Record No. 31] shall be and the same hereby is **GRANTED;**

(2)  that William David Disponett's Motion for Summary Judgment [Record no. 37] shall be and the same hereby is **GRANTED;**

(3)  that all remaining claims pending against Defendants Murgatroyd and Disponett shall be and the same hereby are **DISMISSED WITH PREJUDICE;** and

(4)  that Plaintiff's motion for reconsideration of the Court's October 23, 2007, Order suspending the evidentiary deposition of Dan Duren, scheduled for November 13, 2007 [Record No. 54] shall be and the same hereby is **DENIED AS MOOT.**

-32-

This 14th day of November, 2007.



Signed By:

_**Joseph M. Hood**_

**Senior U.S. District Judge**